Case number 15-3015, United States of America v. Rodney Class Appellant. Mr. Class for Pro Se Appellant Rodney Class, Mr. McOtter for Court Appointed Amicus Curiae for Appellant, and Ms. Jones for the Appellate. Good morning, Mr. Class. Your Honor, we have several issues here. If we are being judged by case law, and case law is running the streets, then we have to go back and address that the prosecution and the police officers are in violation of case law itself. Because when the court has ruled that the D.C. gun laws were declared unconstitutional, that's exactly what it meant. You can't bring somebody in and charge them when the court has already ruled laws were declared unconstitutional. The fact that Judge Scully in the District Court made that ruling in the Palmer case, and then from July 23rd to July 28th on CNN, people were allowed to carry openly on the street. I'm being charged for readily accessible. That's readily accessible. My stuff was inside, my Jeep locked up, and I didn't have a chance to get to it because I was 30 feet from it, and the police officers already pulled my keys. So there's no such thing as accessibility. So if we're running case law, then the prosecution has to be charged for violation. If we're running the law, then let's go back to what Congress said here and say what a firearm is. Under the National Firearms Act, what ATF says it is, what the IRS says it is, a firearm is a shotgun that's been modified to a barrel 18 inches or less, overall length is 26. A rifle that's been modified to a barrel 16 inches, overall length less than 26 inches. A fully automatic machine gun and a silencer. I did not have any of these. I had a carry concealed permit from North Carolina that allowed me to carry a pistol and a rifle, and that's exactly what I had. I did not have a firearm. I had an arm or what is called a piece in the military. The other issue is is that the parking lot was not posted. There's no signs coming into D.C. to let you know you can't bring anything into this town. That's the other issue that we're dealing with in this. And if we are sitting here being judged by the law, then the prosecution under Title 36, Chapter 705, Section 705-03, disqualification for anybody who belongs to the bar member on the federal side. They cannot violate the Constitution. They cannot violate the laws, as Congress has wrote it up. And this is a clear case that this was a violation. Under that section, it says whoever violates this is to be disqualified. They're advocating the overthrow of the United States government. They've advocated the overthrow of the Constitution. This violates the Smith Act. This violates Title 18, Chapter 115, Section 2385, insurrection, rebellion, sedition, treason. Again, we have an issue here. I had a carried concealment permit. The Constitution under Article 4, Section 1 and 2 gave me full faith and credit. The 14th Amendment gave me full faith and credit. Title 42, 1981 gave me full faith and credit. So are we running under laws or are we running under case law? Because people are not being charged out on the street for case law. They're being charged under a statutory number. The problem we're running into is the terminology. Congress defined it in the National Firearms Act, 1968 Gun Control Act, and the 1999 Firearms Owner Protection Act of what a firearm is. Your Honor, I did not have a firearm. I had a pistol and a rifle, and I had a carried concealment permit from the state of North Carolina. Constitutionally, I was well within my right to carry it, but I did not have it on me. It was in my vehicle because I went into the House of Senate. I went into the Congressional. I went through two metal detectors, and I was searched out on the street between the two buildings. Thank you very much, Mr. Clash. Your time is up. I appreciate it. Thank you. Good morning. Good morning, Your Honor. You may please record. I'm Trumac Hunter, court-appointed amicus, arguing in favor of Appellant Rodney Clash. I'm reserving one minute for rebuttal. If I could, I'd like to jump straight to why this court should reach the merits in this case. And there are three reasons. First, even assuming for the sake of argument that there was an appellate waiver here, that waiver cannot be knowing and intelligent. And the reason is because during the Rule 11 colloquy, Chief Judge Roberts told Mr. Clash, quote, You can appeal your conviction if you believe your plea is somehow unlawful. Now, three pages later in the transcript of Supplemental Pen X-105, Mr. Clash confirmed that exception. This court has held repeatedly, for example, in United States v. Godoy at 706 F-3rd of 493, that a defendant is entitled to rely on the plain meaning of what the trial judge says during the Rule 11 colloquy. Well, here Mr. Clash did just that. He appealed his conviction almost immediately. In fact, even before the judgment was out. I know that we sit to review errors by a district judge of the district court that have been preserved for appellate review. What errors are you saying the district judge committed that have been preserved for appellate review in light of the fact that the guilty plea was entered without considering the specific terms of the plea agreement, which I agree with you, that's a very good argument. But just in the inherent nature of the guilty plea, the norm is that all that's gone before that hasn't been specifically reserved for appeal is not usually reviewable. Isn't that the case? Well, the Supreme Court said in MENA footnote 2, which we think is directly on point here, that a guilty plea doesn't inherently waive anything. What a guilty plea does is it establishes factual guilt to the point that the government no longer has to prove it. And that will inherently render irrelevant many constitutional arguments, essentially all statutory arguments, a lot of procedural arguments. But there are still some arguments that that doesn't render relevant. Those are the ones that fall within the Black Ledge MENA exception, right? Right, essentially. Claims like that that do not depend on factual guilt. Oh, well, I mean, that's one interpretation of the scope of the Black Ledge MENA exception. But I guess I thought the point that Judge Santel was making is that if you just put that exception to one side, because that's true that under all the cases, including our cases and the Supreme Court's cases, whatever is bound up as relinquished by the fact of the plea itself, there's some residual that's left because of Black Ledge MENA. But if you put that to one side, then under our decisions,  Well, perhaps ordinarily we think in this case, and this is moving into the second reason why we think that the court should reach the merits here, the terms of the plea here aren't entirely clear on this. For example, Mr. Class explicitly waived numerous other rights. He never explicitly waived this right. And which right? How would you frame the right? The right to directly appeal his conviction. And he waived his right to collaterally attack it. He waived his right to directly appeal his sentence. Do we require that? Do we require an express waiver of the right to appeal if it's not a conditional plea? I mean, Rule 11AA2 talks about conditional pleas. Right. Do we require an express waiver of that? Well, so we think in this case that the integration clause essentially affected a preservation of all claims not waived. As we understand in Rule 11, the conditional appeal part essentially leaves to the parties themselves to decide what issues are preserved, which issues will be waived. And in a case like this, the parties didn't waive this, and then I think it's very critical that they included an integration clause. The government said there will be no implied understandings or conditions. So can I get to the integration clause in a second, but let's just assume that's not there for purposes of this question. Why are we talking in terms of a right to appeal? Because I thought the rationale of our decisions and the Supreme Court's decisions is not that there's some particular thing about an appeal. It's that when you plead guilty, the nature of a guilty plea is that you're acknowledging that you're convicted. And so then one thing that naturally follows from that is that you can't appeal. You also, based on that, you can't appeal the fact of the conviction because what you're doing by pleading guilty is being convicted. So the appeal is a part of that. Motion for reconsideration before the trial judge will be part of that, too. It's just that a lot of things are bound up in the fact of the plea itself, and that's one of the adjuncts of that is it's not subject to appeal. Does that understanding drive with your understanding? Well, so we think MENA footnote 2 essentially says that when you plead guilty, you do admit factual guilt, and we understand that to mean you admit the government can meet each element of the statute here. But there are still some things that don't survive. So on factual guilt, then in the universe of factual guilt, once we bring back in the integration clause now, would you say that even factual guilt is something that can be appealed notwithstanding the agreement? Perhaps. I don't think so, though, because in that case, the defendant would have conceded that issue below. We're not saying that the integration clause means Mr. Class can raise that. But we're talking about the right to appeal. And so it seems to me that your argument, I think, would suggest, or maybe there's a distinction, that because the agreement speaks of a right to appeal, it talks about appeal only in relation to sentencing. Anything else can be appealed, including factual guilt. Right. Well, perhaps he could appeal, and then it would be immediately foreclosed by his factual concession in the district court. If he tried to argue, actually, I wasn't on the capital grounds, or it turns out that wasn't me at all, those issues we think are conceded under MENA footnote 2. But you'd get to the merits. It's not that the ability to raise them is foreclosed. Yes, I think that would be correct, Your Honor. And so those are the first two reasons why we think the court should reach the merits, knowing and intelligent, even assuming there was a waiver here. It wasn't knowing and intelligent. The second reason, in terms of the guilty plea, there's at least a doubt there, we think. And under this court's decision in the sealed case from 2012 at page 63, footnote 2, we think there's at least a doubt there. Then the court should construe that against waiver, against the government, and in favor of Mr. Class. So can I ask about the integration clause then? The integration clause speaks in terms of understanding promises, agreements, representations, other than those contained in writing. But it defines those understandings as those that have been made by the parties. Right. So one way to think about what Judge Griffith was referring to in Rule 11 is that there's a background understanding in the law that a guilty plea has certain consequences, including that anything that's not part of the Black Ledge MENA exception is something that you relinquish at the time you plead guilty, and then therefore you can't raise it again, including on appeal. So it's not something that's part of an arrangement between the parties. It's just something that otherwise exists under the law. And if it otherwise exists under the law, then the integration clause isn't doing a whole lot of work. Well, so we think that this is something where there's a background legal principle under Rule 11, but it really is something that's to be decided between the parties. For example, in Delgado-Garcia, at page 1343, there was a claim that was not preserved under Rule 11. It was not under Black Ledge MENA, but the court still addressed it because the government hadn't properly invoked the waiver. And so as we see it, what Rule 11 does is it leaves to the parties how these issues will be reserved for appeal or not reserved for appeal. And then when you're on appeal, essentially the court can decide whether the merits of those issues if the government and the defendant haven't expressly waived them. Again, we think there's at least a question here, given the integration clause, given the other facts, given the Rule 11 codify. In an under-sealed case, we think there's at least a question about it. The court must proceed to the merits, assume there was no waiver. I see. We'll let you get to the merits. If I could hit my third point quickly as to why the court should reach the merits, it's the Black Ledge MENA exception. And we think that because we're attacking the constitutionality of the statute here, we fit under this court's decision in Coleman, which said that such a claim is not waived by a guilty plea. We think we fit under MENA and Black Ledge themselves, which said if you're raising a claim that the government cannot convict the defendant validly, regardless of his factual guilt, those sort of claims survive. I thought we had construed Black Ledge MENA quite narrowly, and far more narrowly than you're recounting. The way I understand it is if there's no jurisdiction of the court, that's not a claim you can make here. Correct. I'm making that claim. The second one is with the effect that the government can't even indict someone. It's that basic. And you're saying that's the nature of the exception here. Well, we think that to the extent the court's decisions in Miranda and Delgado-Garcia, which I think are probably the cases you're referring to, to the extent that they suggest otherwise that a claim about the constitutionality of the statute is automatically waived by a guilty plea, then we think that those should be read in light of their facts. And we think it's really critical in those cases that the defendants had conceded facts at the district court that directly foreclosed their guilty pleas. And that's important because under Brose, the 1989 Supreme Court case, a Black Ledge MENA claim cannot survive unless it's apparent from the face of the record at the time of the guilty plea. Well, in Delgado-Garcia and Miranda, they didn't just not survive. They were actually foreclosed by the trial record below. That's not the case here. We don't contend that the facts below should be challenged. We're going on the facts as they exist, the record as it sits right now, and saying that those kinds of claims, because we attacked the constitutionality of the statute, should survive. And for that reason, the decisions in Delgado-Garcia and Miranda, while correct on their facts, do not dictate the outcome here. I'm sorry, get to the merits. I said you're going to get to the merits. I didn't let you get there. Get to the merits, please. All right, I appreciate that. I'll try to go through it quickly. Well, so we think that the gun ban violates the Second Amendment because it categorically prohibits a responsible citizen from keeping or bearing any weapon whatsoever for self-defense in an area that's publicly accessible and unsecured. This is an as-applied challenge, right? For the Second Amendment, yes. Yes, for the Second Amendment. So let's talk about Mr. Klass's circumstance. Right. So we think it's important here. Mr. Klass never brandished the weapon. In fact, he never carried it on his person at all. The government concedes at page 7 of their brief he had no criminal intent to use the weapon. They concede at page 48 of their brief that he has no violent history. And we think that in an as-applied challenge, as Judge Tinkovich said in his concurrence in Bonaty, which we think is really on point here, that the who of an as-applied challenge is really critical here. Well, we have Mr. Klass, someone who admittedly mistakenly parked in someone else's spot. But besides that, he never used a weapon in any dangerous way. He has no violent history or prior felonies or anything like that. And yet there's a felony conviction against him. And we think that that's essentially a major problem here under the Second Amendment. And the government argues, well, none of that matters because this parking lot is a sensitive place. But I think if you look through their brief carefully, what you see is that they describe other parts of the Capitol grounds as being sensitive, the Capitol itself, the Capitol steps perhaps, inside the buildings, restricted areas. But they never really talk about this parking lot in particular. They never explain why this parking lot is so sensitive that effectively the Second Amendment just doesn't apply. It's pretty close to the Capitol building, isn't it? Well, it's about 1,000 feet. And I think that's giving the government the benefit of the doubt. It's an easy walk after lunch. And it's right next to the Botanical Garden. Yeah. Well, so using judicially noticeable maps and giving the government the benefit of the doubt on the distances, I'd say it's about 1,000 feet, a little more, to the steps of the Capitol, about 900 feet to the entrance of Rayburn, 300 or 400 feet from the entrance to the Botanicals. Let me back up a little bit. So your first argument is that he didn't carry it with him? He didn't have it with him? So what, that the statute is too broad in reaching a situation where someone's not – where they have it in their car but they don't have it on their person? Well, so the government – Do you think that's a distinction that makes a difference constitutionally? Well, we think it certainly shows in this case that Mr. Class's behavior was not in any way threatening or dangerous. He never had it concealed on his person or carried openly on his person. And then that would apply no matter how close the car got? Right. True. But, of course, in this case the car was 1,000 feet away, perhaps more. And it just seems like that's ultimately the nub of your argument then, is that the vehicle never got close. It's not that the person – Or the weapons never got close, I think is the key point. Yeah, the vehicle carrying the weapons. Right. Well, the government argues that this was concealed carry, and so I'm trying to rebut that point, that this was truly carry at all. He never bared it on his person at all.  So you wouldn't say that there's no curtilage around the Capitol building to which a law could be constitutionally applied? Well, so Heller 1 obviously said that bans inside buildings are presumptively constitutional. We don't challenge that. And then even around these buildings there are armed guards posted, and they can still present the same problems as inside the buildings themselves, such as people could be tightly confined, you could have senators walking immediately in and out of the buildings, that sort of thing. And so even around the buildings, the curtilage, even a reasonable amount of distance away from them, the government has a much stronger interest in banning weapons, and commensurately individuals have a much lesser interest in defending themselves. But when you get so far away like this in an area where there aren't constant patrols, where you're not close to a building, where there's nothing sensitive going on, it's really just a parking lot in many ways like any other parking lot, that at that point essentially the gun ban is swept too broadly. It's no longer a regulation that could be sensible or reasonable. It seems like there's some sense in having parking lots that are further away if there's greater crowds that go into the premises, right? That's just the natural incident of having a popular destination is that you're going to need more parking spots. So the fact that the parking lot happens to be a distance away might just reflect the fact that there's lots of visitors or that there's lots of people who need to come in and out of the building to carry on the kind of government business that occurs in that location. Well, I don't think that the lots are exclusively for tourists or visitors, that sort of thing. I mean, people need to park anywhere. That's why Mr. Klass ended up parking there, because essentially this area is a free drive-through at any time of the day. There's no security arm. There's no security barrier. You don't go through metal detectors or anything like that. And so I think that the distance is critical because it shows that this isn't close to a building. These weapons couldn't easily be brought into a building, and this parking lot in particular. There's really just nothing sensitive about it. And if the government wants to say that the Second Amendment doesn't apply at all on a particular place, which is presumptively what happens when you say a place is sensitive, the government needs to meet a much stronger burden here. And at the district court they just argued, well, this is government property, therefore it's sensitive. I mean, you don't think that constitutional rights suddenly end right at the government property line. All right. Thank you very much. Good morning, Your Honors. May it please the Court. Belinda Jones for the United States. To address Amicus's arguments, the plea, we believe, was fully knowing and intelligent. He has not moved to withdraw the plea, which is one sign that Mr. Klass really does not believe. How do you read the plea colloquy? Do you agree with your friend's interpretation of what took place? That was one of the conversations that the judge had with Mr. Klass. There were two follow-up conversations that are recited in my brief at page 15, and one of them he spoke to Mr. Klass and said, now I want to confirm, do you understand that you're giving up your appeals rights except for the exceptions we discussed? And Mr. Klass said, yes, I do. And then the final conversation between them, the judge says, do you agree, do you understand that you are giving up your right to appeal your conviction and sentence except if the sentence exceeds a statutory maximum or the claims are based on ineffective assistance of counsel or newly discovered evidence? And that is on, I believe, pages 114 and 115 of the plea colloquy. So the last thing that Mr. Klass heard the judge say to him is, do you understand that you are giving up your right to appeal your conviction and your sentence except for a couple of exceptions that only apply to your sentence? So you're saying it sort of works like an integration clause? Yes, in that way. Well, not so much an integration clause as you have to look at the totality of the colloquy, of the conversation between the judge and the defendant. And it is significant, we think, that although the claim by amicus is that this invalidates the plea, there's been no attempt to move or vacate the plea. He received benefits from the government as a result of this plea, but now wants to take away part of the benefit that the government received and yet not have to give up anything himself. We gave up... I'm sorry, Your Honor. The fact that there hasn't been a motion to withdraw the plea, that doesn't answer the arguments that have been made about the scope of the plea agreement, right? So in other words... Right. So if the integration clause is read in the way that amicus suggests it should be read, then there still would be an opportunity to appeal the issue that's being appealed. But the integration clause can't take away the effect of law. As Your Honor pointed out, there's a backdrop of legal understanding about the legal consequence of a guilty plea, and it's understood the reason you cannot find, or I was completely unable to find, a case that addressed the effects of an integration clause on a guilty plea. So can I just ask on this integration, is it fair to assume that this is just boilerplate plea legal language that exists? It's boilerplate, Your Honor. And why is it that apparently in some places there's an explicit provision made as to appeals of convictions, but in this agreement there isn't? Your Honor, I think there might be two reasons for that. One is I think often the language that's being used is really talking about the conviction and collateral attacks on the conviction, which would not be preserved, would not be waived by a guilty plea. In some instances I think it's just an example of suspenders and belt and suspenders, just overcautious writing and too much overdrafting. But I would come back to the other point. The government can't give away, we submit, the government can't give away the requirements of Rule 11A2. That rule says the issues to be preserved have to be put in writing, the government has to affirmatively agree, and most important, the court has to affirmatively agree. Can you explain why it is, though, that as Judge Schoenweiss has asked, we see from time to time from your office plea agreements that do say they're waiving the right to appeal, not just Senate, waiving the right to appeal. Why was that not here if that was the intent in this case? We think that those other agreements are just an example of being overcautious and too cautious, belt and suspenders, but it's not a necessary part of a plea agreement that we do that. We're just repeating what the law already does as a result of a guilty plea. And we could not even, even, I'm trying to- Do you think it would be a good idea if your office got together on whether those were waived or not? Well, I- I don't think it's been that long since I saw one. I am in the appellate section, so yes, I would always agree that it would be good if all of our attorneys would be consistent about what they do. But that doesn't negate the effect of Rule 11A2. It doesn't negate the effect of TOLET. The integration clause cannot take away at least the legal effect of 11A2 because the court was not a part of that plea agreement, and we do not, we as the government, do not have the ability to give away the court's authority over a conditional guilty plea. So we don't think the integration clause can serve the purpose that amicus would like it to serve in this case. Can you make the point again about how the court becomes involved? I'm not quite following it. Rule 11A2 says that in order for there to be a preservation of appeal rights, the defendant has to affirmatively put in writing the issues to be appealed, the government has to affirmatively agree that those are the issues, and the court has to agree that those issues can be appealed. You have none of that in the record of this case, and what amicus would have you do is use the integration clause of this agreement between the government and the defendant to negate the legal effect of Rule 11A2, which would basically take the court out of the process and take out of the process the listing of the issues to be appealed so that everyone knows what the constraints are on what may be appealed. But the court approves of the agreement, right? But they don't, but this agreement, amicus has this agreement waiving the government's ability to protest this appeal. The issues to be appealed don't appear in that agreement. That's not affirmatively set out. It just seems like it falls back, unless I'm missing something. It seems like it then just falls back on what work you think the integration clause is doing because if the integration clause is doing the work that amicus says it is and then the court is approving the agreement that includes the integration clause, then what the agreement is effectively saying is there's a bunch of stuff that is still subject to appeal because the agreement doesn't spell out that it's not subject to appeal. But we believe that the court has the right to know what stuff is specifically being preserved for appeal because one of the purposes of the rule is to encourage conditional pleas when the issues will resolve everything so that we aren't going to have this continuous litigation Would it be reasonable to say or fair to say that your position is that there would be no reason for Rule 11.A.2 if it were not the case that the legal backdrop is the appellate issues have been forfeited or waived by the guilty plea? Well, certainly. There would be no need for that. And 11.A.2 in the commentary says basically it's reflecting the Tollett Standard and the law as it was at that time. And it was to allow courts that were reluctant to allow conditional guilty pleas to do so with confidence knowing what the issues would be. So the background, what we're talking about, there's this notion that there's a background principles of law against which the agreement is put in operation and your point is that one of the background principles of law is that there actually needs to be an itemization of the particular issues that are going to be appealed because the assumption of Rule 11.A.2 as a court is part of that colloquy to determine what particular things are still open to be resolved on appeal. Yes. Yes, Your Honor. Okay. As to Blackledge-Mena, we agree that this court has construed the Blackledge-Mena exception narrowly as the court held in Miranda and in Delgado-Garcia as applied challenges, as applied challenges to the constitutionality of a statute, do not fit within Blackledge-Mena because they don't prevent the court from hailing the defendant into court to determine whether or not the as applied challenge is appropriate. So that leaves here in this case only the vagueness challenge if the vagueness challenge is construed as a facial challenge. But as we've pointed out in our briefs, that's forfeited for an additional reason because there was no vagueness challenge presented to the court below. There's no ruling on that in the court below. And this court has held at least three times that the failure to raise a constitutional claim in the court below is a complete forfeiture, not merely a waiver, but a forfeiture. And so on that basis, the vagueness charge falls out. If you'd like, as to the merits, we would point out that we are certainly not saying that simply because the federal government is the owner of property, that gives them a right to do whatever they want in terms of gun ownership. But that's not the question here. The lot that we're talking about was reserved for the exclusive use of house employees. If you stand in that lot and look to your right, if you face the Capitol and look to your right, you'll see the Rayburn office building looming over the street, and you'll see the Capitol up here. House employees from the Rayburn House office building would be using that parking lot during the time when Mr. Klass had parked the Jeep there. It was a work day. He parked in the middle of the day. That's partly the reason why- Can I just ask you one question before we talk about the details of exactly where that lot is located? This question about concealed carry? Yeah. As I normally think, I think as one normally thinks about concealed carry, you're talking about weapons that are concealed on the person, not weapons that are somehow descriptively accountable as concealed because they're in a car. When we prosecute cases in the District of Columbia for carrying drugs or carrying weapons, carry and constructive carry also include items that are within easy reach, at a minimum within easy reach. One of the weapons found in Mr. Klass's Jeep was in an unsecured bag right beside the driver's seat, between the driver's seat and the passenger seat. That's an easy factual scenario for us to be able to prove that he was in possession constructively carrying at least that weapon when he drove the Jeep onto the parking lot, and that lot is part of the Capitol grounds. So we would also point out that he pled guilty to carrying the weapon onto the Capitol grounds, and I don't think this is the time for amicus to suggest that that fact can be disclaimed. He agreed that he was carrying the weapon on the Capitol grounds. It's too late to go back on that factual agreement. But that is the legal way we approach these kinds of facts in determining whether or not somebody is carrying whatever item it is. We would say as well that the general sensitivity of the grounds we've explained in our brief, the need to protect Congress, the need to protect their staffs, and the need to protect Congress, of course, is more than the need to protect the public generally from general crime. Amicus focuses a lot on that. But, of course, there's a special need to protect people who may be targeted simply because they are legislators, because of their role. That applies as well to areas, as Your Honor has suggested, the curtilage around the buildings where the members of Congress and their staffs are going to be. I'm not very familiar with guns, but unless someone can say that you cannot stand where his Jeep was parked and kill someone who's standing in front of the Rayburn office building or someone who might be standing on the terrace of the Capitol, then I think it's within the curtilage. That'd be an awfully good shove with a handgun. Well, they were not all. I think one of the items was a rifle, Your Honor. Hand rifle. But that doesn't matter in terms of the general applicability of these regulations. The concerns of the Capitol Police and the security of the people on the Capitol grounds has to allow them some curtilage, some room to have a buffer around these buildings where we know people who are likely to be targeted are going to be doing their work. And that's one of the most important reasons for allowing this regulation to apply outside the buildings as well as inside the buildings. Your Honors? We have your argument. Thank you very much. We would like you to affirm. Thank you. I believe you reserved one minute, Mr. McConnell. We'll give you back a minute. I appreciate it, Your Honor. If I could, I'd like to hit a few points very quickly that the Governor mentioned. She talks about the perhaps back and forth in terms of the rule colloquy. But Mr. Klass confirmed that SA-105, there were exceptions to appealing his conviction. And then he almost immediately appealed. He appealed before there was even a judgment. So I think we understand what his view was. Also, this argument that the government cannot give up the Rule 11 rights, I think is belied by this Court's decision in Delgado Garcia, page 1343, where the Court found that there was a claim that was not preserved under Rule 11, was not under Black Legimenta, and the Court still addressed it because the government hadn't invoked it. We think that pretty clearly shows this is something for the government and the parties to decide. Also, on the point that Judge Santel was making, it would have been very easy for the government to include a provision like this. And the fact that they didn't is kind of what's led to this morass, as it were. And so, I mean, we want to encourage the government to clearly draft these guilty pleas. I think that's what the sealed case decision makes clear. Also, one more point. The government repeatedly cites Tollett v. Henderson for this argument that everything before the guilty plea is inherently waived. But Mena, two years later, expressly disapproved that reading of Tollett, a footnote, too. And so we don't think that there's this clear breaking point every time, right at the guilty plea and everything, before this has gone. If the Court has any other questions, I'd be glad to answer them. Great. Thank you very much. Thank you, Your Honor. The case is submitted. Mr. McOtter, you were appointed by the Court to appear as amicus in this case, and we thank you very much for your assistance.
judges: Griffith, Srinivasan, Sentelle